**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| JENNIFER LYNN HANLEY | : | |
| 702 Cambridge Avenue | : | CIVIL ACTION |
| Bethlehem, PA 18018 | : | |
| | : | |
| Plaintiff, | : | No.: _____ |
| | : | |
| v. | : | |
| | : | |
| FRONTIER AIRLINES, INC. | : | |
| 4545 Airport Way | : | **JURY TRIAL DEMANDED** |
| Denver, CO 80239 | : | |
| | : | |
| Defendant. | : | |
| | : | |

## CIVIL ACTION COMPLAINT

Plaintiff, Jennifer Lynn Hanley, (*hereinafter* referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.    Plaintiff initiated this action to redress violations by Defendant Frontier Airlines, Inc. (hereinafter referred to as "Defendant") of the Pregnancy Discrimination Act ("PDA"), Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 200d *et seq*.), the New Jersey Law Against Discrimination ("NJLAD" - N.J.S.A. §§ 10:5-1 *et seq.*), and the Family and Medical Leave Act ("FMLA" – 29 U.S.C. § 2601 et. seq.). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.    This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

3.      This Court may properly assert personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4.      Pursuant to 28 U.S.C. § 1392(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the District of New Jersey.

5.      Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing her Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult individual, with an address as set forth in the caption.

8.      Defendant is a foreign corporation with a principal place of business at the address set forth in the caption.

9.      At all relevant times, Defendant conducted substantial business in New Jersey.

10.     At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

## FACTUAL BACKGROUND

11.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12.     Plaintiff is an adult female.

13.     Plaintiff began her employment with Defendant on or about October 25, 2021, as a Flight Attendant. She subsequently commenced training in or about January 2022, with her first working day being January 27, 2022.

14.     Plaintiff was hired through and primarily based out of Defendant's location at 1100 Terminal Circle Drive, Ewing Township, NJ 08628.

15.     During her employment, Plaintiff was primarily supervised by Inflight Supervisor Daniel Moskowitz (hereinafter "Moskowitz") and Base Supervisor Brandon Appel (hereinafter "Appel").

16.     At all times during her employment with Defendant, Plaintiff was a very hard-working employee who performed her job well.

17.     On or about February 22, 2023, Plaintiff discovered she was pregnant (via a pregnancy test), after which she immediately worked a red-eye flight.

18.     Plaintiff felt incredibly fatigued and ill during the red-eye flight, prompting her to call out of work on February 24-25, 2023.

19.     When emailing management about her call-out, Plaintiff informed Moskowitz and Appel that she was addressing health issues and would be applying for FMLA leave in the future, during which she would provide them with more information.

20.     Appel and Moskowitz replied that Plaintiff should feel better and keep them updated.

21.     Thereafter, on or about March 7, 2023, Plaintiff reached out to Defendant's FMLA email line to request intermittent FMLA leave.

22.     The following day, Defendant's FMLA Email Support Expert, Kyle (last name unknown, hereinafter "Kyle"), replied to Plaintiff's email, stating that he would open a "maternity claim" for her, send her paperwork for her physician to complete, and asked that she respond to several questions, including her delivery date and whether she needed intermittent leave for "standard prenatal appointments."

23.     On the same day, Plaintiff responded, stating that her estimated delivery date was October 22, 2023, and that she required intermittent leave for standard prenatal appointments and "other related pregnancy-medical reasons."

24.     Subsequently, on or about March 9, 2023, FMLA Email Support Specialist Terrance A. Harris (hereinafter "Harris") responded with a claim number and inquired about the date Plaintiff wanted her intermittent leave to begin.

25.     Plaintiff replied to Harris on or about March 10, 2023, stating that she had already received her block FMLA decision letter for maternity leave but had not received an update regarding her intermittent leave. She expressed concern about this due to "the sake of the symptoms currently being experienced and upcoming appointments."

26.     Plaintiff later received a response from another FMLA Email Support Expert, Caitlin (last name unknown, hereinafter "Caitlin"), who stated that she did not see an intermittent leave request for Plaintiff's maternity leave (despite Plaintiff having responded with the same to Kyle on or about March 8, 2023) and requested Plaintiff's intermittent leave start date.

27.     On or about March 10, 2023, Plaintiff initially responded to Caitlin, requesting her intermittent leave to start "effective immediately," but later followed up with an email requesting

to backdate the start date to February 22, 2023, to cover the initial dates she had taken off for pregnancy symptoms following her aforementioned red-eye flight.

28.    Harris subsequently sent a follow-up email confirming, "We have updated your intermittent leave request date to 02/22/2023."

29.    Plaintiff then replied, thanking both Harris and Caitlin, and requested that "her callouts from 2/24 and 2/25 be considered FMLA."

30.    Nonetheless, despite filing for FMLA as soon as Plaintiff had confirmed her pregnancy and following all of the instructions she had been provided for the same, Plaintiff received an email from Defendant's FMLASource later that same day, March 10, 2023, that February 24 and 25 had been recorded on their system, but were "unprotected" for purportedly not tracking her time "according [to] the Organizations tracking policies."

31.    Plaintiff then later received a conflicting FMLASource letter, dated March 28, 2023, stating that her intermittent leave had been approved effective February 22, 2023.

32.    On or about March 21, 2023, Plaintiff then informed Moskowitz and Appel that she was pregnant, with an estimated delivery date of October 22, 2023. Moskowitz and Appel advised Plaintiff to keep them in the loop.

33.    Plaintiff thereafter, for the next two months, utilized a few days of intermittent FMLA leave for her pregnancy-related symptoms (including severe nausea and hot flashes) and pre-natal visits, all of which she reported as FMLA.

34.    Nevertheless, Defendant unlawfully issued Plaintiff disciplinary points as part of their attendance policy for several of these dates (including February 24 and 25), even though Plaintiff has confirmation emails for reporting the same as FMLA.

35.    Thereafter, in or about the first week of May of 2023, Plaintiff needed to take time off for a doctor's appointment for a UTI, for which she was at an increased risk due to her pregnancy.

36.    As a result, Plaintiff drafted a request on Defendant's reporting app that she was requesting that Friday, May 5, 2023, and the following Monday, May 7, 2023, off, and sent the request after which she immediately closed the app.

37.    However, Plaintiff discovered later that in closing the app quickly, she prevented the request from completing.

38.    As a result, Plaintiff was issued additional points for purportedly failing to notify Defendant that she was calling off those days.

39.    Plaintiff reached out to report the mistake, even offering to provide doctor documentation, but she was instead informed that she was being suspended on or about May 13, 2023, pending investigation into the points that she had been assessed for taking absences for pregnancy-related symptoms/medical issues/pre-natal care.

40.    Defendant failed to give Plaintiff required notice or an opportunity to cure deficiencies in her FMLA leave request.

41.    Plaintiff was then terminated on or about June 13, 2023, for purportedly violating Defendant's dependability ("attendance") policy – which is patently untrue, as the majority (if not all) of the points that she had been issued were for pregnancy-related medical issues and/or pre-natal care (NJ LAD and FMLA protected leave), and she had reported the same properly.

42.    Rather, Plaintiff was terminated in close proximity to reporting her pregnancy to Defendant's management, discussing her need for pregnancy-related leave (for symptoms, issues,

pre-natal appointments, and maternity leave), and applying for intermittent and block maternity leave.

43.    Plaintiff therefore believes and avers that she was terminated from her position with Defendant because of her gender/pregnancy and/or anticipated pregnancy leave in violation of Title VII and the Pregnancy Discrimination Act ("PDA") and the NJ LAD.

44.    Plaintiff believes and avers that she was denied her rights under the FMLA and terminated in retaliation for her use or attempted use of FMLA leave.

**COUNT I**
**<u>Violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and</u>**
**<u>the Pregnancy Discrimination Act ("PDA")</u>**
**([1] Pregnancy Discrimination; and [2] Retaliation)**

45.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46.    Plaintiff was subjected to a hostile work environment through disparate treatment, discriminatory comments, and demeaning/discriminatory treatment because of her pregnancy and/or complaints of pregnancy discrimination.

47.    Plaintiff expressed concerns of pregnancy discrimination on more than one occasion in the months leading up to her unlawful termination; however, Defendants failed to perform a proper investigation and instead subjected her to increased hostility and animosity in retaliation for her complaints.

48.    Plaintiff believes and therefore avers that her pregnancy was a motiving and/or determinative factor in Defendants' decision to terminate her employment.

49.    Plaintiff also believes and therefore avers that she was terminated because of her complaints of pregnancy discrimination.

50.    These actions as aforesaid constitute violations of Title VII/the PDA.

**COUNT II**
**Violations of the New Jersey Law Against Discrimination ("NJ LAD")**
**([1] Pregnancy Discrimination; and [2] Retaliation)**

51.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52.     Plaintiff was subjected to a hostile work environment through disparate treatment, discriminatory comments, and demeaning/discriminatory treatment because of her pregnancy, complaints of pregnancy discrimination, and/or because she requested accommodations (in the form of medical leave) related to her pregnancy.

53.     Plaintiff expressed concerns of pregnancy discrimination on more than one occasion in the months leading up to her unlawful termination; however, Defendants failed to perform a proper investigation and instead subjected her to increased hostility and animosity in retaliation for her complaints.

54.     In addition, Plaintiff requested reasonable medical leave (an accommodation under the NJ LAD) for her pregnancy and was subjected to discriminatory and retaliatory treatment following said requests.

55.     Plaintiff believes and therefore avers that her pregnancy was a motiving and/or determinative factor in Defendants' decision to terminate her employment.

56.     Plaintiff also believes and therefore avers that she was terminated because of her complaints of pregnancy discrimination and/or due to her requests for accommodations related to her pregnancy.

57.     These actions as aforesaid constitute violations of the NJ LAD.

**COUNT III**
**Violations of the Family and Medical Leave Act ("FMLA")**
**([1] Retaliation & [2] Interference)**

58.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

59.     Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

60.     Plaintiff requested leave from Defendant, her employer, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

61.     Plaintiff had at least 1,250 hours of service with Defendant during her last full year of employment.

62.     Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

63.     Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

64.     Plaintiff was suspended and ultimately terminated in close proximity to her requests for FMLA leave for care and treatment related to her pregnancy.

65.     Defendant interfered with Plaintiff's FMLA rights by, *inter alia*, failing to appropriately designate FMLA-qualifying absences as protected, failing to give Plaintiff required individualized notice, and by enforcing its attendance policy without consideration of unusual circumstances existed.

66.     Defendant committed interference and/or retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising her FMLA rights and/or for taking

FMLA-qualifying leave; (2) considering Plaintiff's FMLA leave needs in making the decision to terminate her; (3) terminating Plaintiff to intimidate her and/or prevent him from taking FMLA-qualifying leave in the future; and (4) by making negative comments and/or taking actions towards her that would dissuade a reasonable person from exercising her rights under the FMLA.

67.     These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.     Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.     Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.     Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E.     Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F.     Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
Timothy S. Seiler, Esq.
Charles Scott, Esq.
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801

Dated:  December 4, 2024