UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JENNIFER LYNN HANLEY,<br><br>    Plaintiff,<br><br>vs.<br><br>FRONTIER AIRLINES, INC.,<br><br>    Defendant. | Civil Action No. 3:24-cv-10904-MAS-JBD<br><br>**JOINT PROPOSED DISCOVERY PLAN**<br><br>Conference Date: March 18, 2025<br><br>   *Electronically Filed* |

1. Set forth the name of each attorney appearing, the firm name, address and telephone number and facsimile number of each, designating the party represented.

  For Plaintiff Jennifer Hanley:
  Timothy S. Seiler, Esq.
  Charles Scott, Esq.
  8 Interplex Drive
  Suite 210
  Feasterville-Trevose, PA 19053
  (215) 639-0801 Phone
  (215) 639-4970 Fax

  For Defendant Frontier Airlines, Inc.:
  LITTLER MENDELSON, P.C.
  Amber M. Spataro (NJ Bar No. 036892008)
  aspataro@littler.com
  Jennifer I. Fischer (NJ Bar No. 047432013)
  jfischer@littler.com
  One Newark Center, 8th Floor
  Newark, New Jersey 07102
  973.848.4700
  Aspataro@littler.com
  JFischer@littler.com

2. Set forth a brief description of the case, including the causes of action and defenses asserted.

  **Plaintiff's Description of the Case:**

  Plaintiff, Jennifer Hanley ("Plaintiff"), initiated this action to redress violations by her former employer, Frontier Airlines, Inc. (hereinafter referred to as "Defendant"), of the Pregnancy Discrimination Act ("PDA"), Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§

**Error! Unknown document property name.**
**Error! Unknown document property name.**

200d *et seq*.), the New Jersey Law Against Discrimination ("NJLAD" - N.J.S.A. §§ 10:5-1 *et seq*.), and the Family and Medical Leave Act ("FMLA" – 29 U.S.C. § 2601 et. seq.).

Plaintiff began her employment with Defendant on or about October 25, 2021, as a Flight Attendant. She subsequently commenced training in or about January 2022, with her first working day being January 27, 2022. Plaintiff was hired through and primarily based out of Defendant's location at 1100 Terminal Circle Drive, Ewing Township, NJ 08628. During her employment, Plaintiff was primarily supervised by Inflight Supervisor Daniel Moskowitz (hereinafter "Moskowitz") and Base Supervisor Brandon Appel (hereinafter "Appel").

At all times during her employment with Defendant, Plaintiff was a very hard-working employee who performed her job well. On or about February 22, 2023, however, Plaintiff discovered she was pregnant (via a pregnancy test), after which she immediately worked a red-eye flight. Plaintiff felt incredibly fatigued and ill during the red-eye flight, prompting her to call out of work on February 24-25, 2023. When emailing management about her call-out, Plaintiff informed Moskowitz and Appel that she was addressing health issues and would be applying for FMLA leave in the future, during which she would provide them with more information. Appel and Moskowitz replied that Plaintiff should feel better and keep them updated.

Thereafter, on or about March 7, 2023, Plaintiff reached out to Defendant's FMLA email line to request intermittent FMLA leave. The following day, Defendant's FMLA Email Support Expert, Kyle (last name unknown, hereinafter "Kyle"), replied to Plaintiff's email, stating that he would open a "maternity claim" for her, send her paperwork for her physician to complete, and asked that she respond to several questions, including her delivery date and whether she needed intermittent leave for "standard prenatal appointments." On the same day, Plaintiff responded, stating that her estimated delivery date was October 22, 2023, and that she required intermittent leave for standard prenatal appointments and "other related pregnancy-medical reasons." Subsequently, on or about March 9, 2023, FMLA Email Support Specialist Terrance A. Harris (hereinafter "Harris") responded with a claim number and inquired about the date Plaintiff wanted her intermittent leave to begin. Plaintiff replied to Harris on or about March 10, 2023, stating that she had already received her block FMLA decision letter for maternity leave but had not received an update regarding her intermittent leave. She expressed concern about this due to "the sake of the symptoms currently being experienced and upcoming appointments." Plaintiff later received a response from another FMLA Email Support Expert, Caitlin (last name unknown, hereinafter "Caitlin"), who stated that she did not see an intermittent leave request for Plaintiff's maternity leave (despite Plaintiff having responded with the same to Kyle on or about March 8, 2023) and requested Plaintiff's intermittent leave start date. On or about March 10, 2023, Plaintiff initially responded to Caitlin, requesting her intermittent leave to start "effective immediately," but later followed up with an email requesting to backdate the start date to February 22, 2023, to cover the initial dates she had taken off for pregnancy symptoms following her aforementioned red-eye flight. Harris subsequently sent a follow-up email confirming, "We have updated your intermittent leave request date to 02/22/2023." Plaintiff then replied, thanking both Harris and Caitlin, and requested that "her callouts from 2/24 and 2/25 be considered FMLA."

Nonetheless, despite filing for FMLA as soon as Plaintiff had confirmed her pregnancy and following all of the instructions she had been provided for the same, Plaintiff received an email from Defendant's FMLASource later that same day, March 10, 2023, that February 24 and 25 had been recorded on their system, but were "unprotected" for purportedly not tracking her time "according [to] the Organizations tracking policies." Plaintiff then later received a conflicting

2

FMLASource letter, dated March 28, 2023, stating that her intermittent leave had been approved effective February 22, 2023.

On or about March 21, 2023, Plaintiff then informed Moskowitz and Appel that she was pregnant, with an estimated delivery date of October 22, 2023. Moskowitz and Appel advised Plaintiff to keep them in the loop. Plaintiff thereafter, for the next two months, utilized a few days of intermittent FMLA leave for her pregnancy-related symptoms (including severe nausea and hot flashes) and pre-natal visits, all of which she reported as FMLA. Nevertheless, Defendant unlawfully issued Plaintiff disciplinary points as part of their attendance policy for several of these dates (including February 24 and 25), even though Plaintiff has confirmation emails for reporting the same as FMLA.

Thereafter, in or about the first week of May of 2023, Plaintiff needed to take time off for a doctor's appointment for a UTI, for which she was at an increased risk due to her pregnancy. As a result, Plaintiff drafted a request on Defendant's reporting app that she was requesting that Friday, May 5, 2023, and the following Monday, May 7, 2023, off, and sent the request after which she immediately closed the app. However, Plaintiff discovered later that in closing the app quickly, she prevented the request from completing. As a result, Plaintiff was issued additional points for purportedly failing to notify Defendant that she was calling off those days. Plaintiff reached out to report the mistake, even offering to provide doctor documentation, but she was instead informed that she was being suspended on or about May 13, 2023, pending investigation into the points that she had been assessed for taking absences for pregnancy-related symptoms/medical issues/pre-natal care.

Defendant failed to give Plaintiff required notice or an opportunity to cure deficiencies in her FMLA leave request. Plaintiff was then terminated on or about June 13, 2023, for purportedly violating Defendant's dependability ("attendance") policy – which is patently untrue, as the majority (if not all) of the points that she had been issued were for pregnancy-related medical issues and/or pre-natal care (NJ LAD and FMLA protected leave), and she had reported the same properly. Rather, Plaintiff was terminated in close proximity to reporting her pregnancy to Defendant's management, discussing her need for pregnancy-related leave (for symptoms, issues, pre-natal appointments, and maternity leave), and applying for intermittent and block maternity leave.

Plaintiff therefore believes and avers that she was terminated from her position with Defendant because of her gender/pregnancy and/or anticipated pregnancy leave in violation of Title VII and the Pregnancy Discrimination Act ("PDA") and the NJ LAD. Plaintiff believes and avers that she was denied her rights under the FMLA and terminated in retaliation for her use or attempted use of FMLA leave.

### Defendant's Description of the Case:

Frontier Airlines, Inc. ("Frontier") denies that it engaged in any retaliation in violation of the New Jersey Law Against Discrimination or Title VII of the Civil Rights Act of 1964. Further, Frontier, Inc. denies that it interfered with Plaintiff's rights pursuant to the Family and Medical Leave Act of 1993. Contrary to Plaintiff's allegations, Frontier did not terminate Plaintiff for an unlawful reason or motive, but rather, it terminated Plaintiff's employment for a legitimate, non-discriminatory and non-retaliatory reason unrelated to her leave request or her pregnancy. Defendant preserves all defenses set forth in Defendant's Answer or that may arise during the course of further investigation and discovery related to Plaintiff's claims.

Error! Unknown document property name.
Error! Unknown document property name.

3. Have settlement discussions taken place? Yes _____ No \_\_\_\_X\_\_\_\_

4. The parties <u>have</u> met pursuant to Fed. R. Civ. P. 26(f).

5. The parties <u>have not</u> exchanged the information required by Fed. R. Civ. P. 26(a)(1).

<u>Initial Plaintiff has served her initial disclosures. Defendant will serve Initial Disclosures by March 17, 2025.</u>

6. Explain any problems in connection with completing the disclosures required by Fed. R. Civ. P. 26(a)(1).

<u>None.</u>

7. The parties <u>will</u> file disclosures of third-party litigation funding by March 17, 2025. See Local Civil Rule 7.1.1.

8. The parties <u>have</u> conducted discovery other than the above disclosures. If so, describe.

<u>Plaintiff has served First Set of Interrogatories and First Request for Production of Documents.</u>

9. Proposed Joint Discovery Plan:

   (a) Discovery is needed on the following subjects:[1]

   - Plaintiff's employment with Defendant, including, but not limited to, her pregnancy and alleged limitations, her FMLA leave requests and tracking, her separation from employment, her performance, her job responsibilities;

   - Plaintiff's pregnancy, medical history and any purported requests for leave or time off related to same;

   - The factual bases of Plaintiff's claims;

   - Plaintiff's alleged damages and mitigation efforts; and

   - The factual bases of Defendant's defenses.

   (b) Discovery <u>should not</u> be conducted in phases or be limited to particular issues<u>.</u>

---

[1] The parties reserve all rights, defenses and objections in responding to forthcoming interrogatories and document requests.

4

**Error! Unknown document property name.**
**Error! Unknown document property name.**

(c) Proposed Schedule:

(1) Fed. R. Civ. P. 26 Disclosures: <u>March 17, 2025.</u>

(2) E−Discovery conference pursuant to L. Civ. R. 26.1(d): <u>March 31, 2025.</u>

(3) Service of initial written discovery: <u>March 31, 2025.</u>

(4) Maximum of <u>25</u> Interrogatories by each party to each other party.

(5) Maximum of <u>10</u> depositions to be taken by each party.

(6) Motions to amend or to add parties to be filed by <u>April 17, 2025.</u>

(7) Factual discovery to be completed by <u>September 18, 2025</u>.

(8) Plaintiff's expert report due <u>October 17, 2025</u>.

(9) Defendant's expert report due on <u>November 17, 2025</u>.

(10) Expert depositions to be completed by <u>December 17, 2025</u>.

(11) Dispositive motions to be served within <u>60 days</u> of completion of discovery.

(d) Set forth any special discovery mechanism or procedure requested.

<u>The parties anticipate that depositions may be taken remotely via videoconference. Plaintiff's deposition to be videotaped.</u>

(e) A pretrial conference may take place: <u>at the Court's convenience</u>.

(f) Trial date: <u>At the Court's convenience, to be scheduled at least 60 days after resolution of dispositive motions</u>. <u>(Jury Trial)</u>

10. Do you anticipate any special discovery needs (i.e., videotape/telephone depositions, problems with out-of-state witnesses or documents, etc.)? <u>Yes, the possibility of videotaped depositions as identified in 9(d).</u>

11. Do you anticipate any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced? <u>No.</u>

If so, how will electronic discovery or data be disclosed or produced? Describe any agreements reached by the parties regarding same, including costs of discovery, production, related software, licensing agreements, etc.

5

<u>The parties agree to meet and confer regarding the necessity of discovery of electronically stored information. For emails, the parties will confer about search terms, custodians, and date restrictions after they serve initial written discovery. The parties will produce electronic discovery in TIFF or PDF format and will bear their own costs of discovery.</u>

12. Do you anticipate entry of a Discovery Confidentiality Order? See L. Civ. R. 5.3(b) and Appendix S.

<u>Yes. Defendant will seek entry of a Discovery Confidentiality Order in accordance with Appendix S, should Plaintiff request information and/or documents that contain Defendant's confidential business information, and/or the confidential information of its employees.</u>

13. Do you anticipate any discovery problem(s) not listed above? <u>No.</u>

14. State whether this case is appropriate for voluntary arbitration (pursuant to Local Civil Rule 201.1 or otherwise) or mediation (pursuant to Local Civil Rule 301.1 or otherwise). If not, explain why and state whether any such procedure may be appropriate at a later time (i.e., after exchange of pretrial disclosures, after completion of depositions, after disposition or dispositive motions, etc.).

<u>The parties do not have a position regarding mediation at this time. If the parties determine that mediation is appropriate, the parties request the ability to request a settlement conference or an order to mediation with the Court by letter.</u>

15. Is this case appropriate for bifurcation?

<u>Defendant submits that this case is appropriate for bifurcation of the punitive damages phase of this case from the determination of liability and other alleged damages, as punitive damages are not at issue unless and until liability has been decided in Plaintiff's favor. Plaintiff disputes that bifurcation is necessary.</u>

16. An interim status/settlement conference (with clients in attendance), should be held: <u>at the Court's convenience</u>.

17. We <u>do not</u> consent to the trial being conducted by a Magistrate Judge.

18. Identify any other issues to address at the Rule 16 Scheduling Conference. <u>Not applicable</u>.

**Error! Unknown document property name.**
**Error! Unknown document property name.**

Respectfully Submitted,

/s/  *Timothy S. Seiler*
Timothy Seiler, Esq.
Ari R. Karpf, Esq.
Karpf, Karpf & Cerutti, P.C.
8 Interplex Drive
Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801 (Telephone)
akarpf@karpf-law.com
tseiler@karpf-law.com

*Attorneys for Plaintiff Jennifer Hanley*

Dated:  March 5, 2025


/s/ *Amber M. Spataro, Esq.*
Amber M. Spataro, Esq.
Jennifer I. Fischer, Esq.
Littler Mendelson, P.C.
One Newark Center,
1085 Raymond Blvd, 8th Floor,
Newark, NJ 07102
(973) 848-4700 (Telephone)
aspataro@littler.com
jfischer@littler.com
*Attorneys for Defendant Frontier Airlines, Inc.*

Dated:  March 5, 2025

7